OPINION
{¶ 1} Appellant, Everett Butcher ("Butcher"), appeals his conviction for witness intimidation in violation of R.C. 2921.04(B), a felony of the third degree, following a jury trial in the Ashtabula County Court of Common Pleas. Butcher was sentenced to two years incarceration. For the reasons stated below, Butcher's conviction is affirmed.
 {¶ 2} Butcher was indicted for a single incident occurring on July 8, 2001. The following background to this incident is based on the evidence given at Butcher's trial.
 {¶ 3} The victim in this case, Patrice Deamons ("Deamons"), was Butcher's landlady from October 2000 to May 2001. During this time, Deamons was renting a house to Butcher on Sill Road in Ashtabula Township. Deamons lived in a trailer located on the same property as the house. At some point during this period, Butcher's girlfriend also began living with him. The landlord-tenant relationship between Butcher and Deamons came to an end when Deamons moved off the Sill Road property in May 2001.
 {¶ 4} On the night of May 9, 2001, Butcher and his girlfriend were involved in a domestic disturbance during which the windows of a car owned by Deamons were broken. Butcher was arrested that night for the vandalism of Deamons' car. Deamons, however, had spent the night at an apartment and was unaware of the damage to her car or Butcher's arrest until the following day. Butcher was released from jail on May 11, 2001. The same day, Butcher's mother drove Butcher to the Sill Road property. There, according to Deamons, Butcher confronted Deamons' boyfriend telling him that he had better put Deamons "in her place" and that the charges she filed against him better be dropped. Deamons also testified that Butcher told her on this occasion that she had better drop the charges or she would be sorry. Butcher denied that his conversation with Deamons and her boyfriend on that day was anything but friendly. Butcher's mother also testified to the friendly nature of the exchange between Butcher, Deamons, and her boyfriend.
 {¶ 5} Deamons testified to other incidents where Butcher confronted her and her son and where Butcher attempted to find out where she was now living. Deamons testified further that Butcher warned her that all the witnesses in his case were going to disappear. Butcher denies that these incidents ever occurred. Deamons never reported these incidents to the police.
 {¶ 6} The state also introduced a letter into evidence written by Butcher and dated June 22, 2001. In this letter, Butcher requested that Deamons return his security deposit. Butcher also made the following reference to the charges pending against him regarding the domestic disturbance of May 9, 2001: "We also have another issue with a junk car that you got rid of. I'm facing charges for criminal damage for something I did not do. You told me that you would help me out and tell them that it was not a problem. I did not smash out the windows and will prove my case on this charge if I have to take it to trial. * * * This is not a threat. This is just to insure that the money you hold for my security is mine and you have a criminal charge in the municipal court against me." [Sic.]
 {¶ 7} On July 8, 2001, the date of the incident for which Butcher was indicted, it is undisputed that Butcher was driving a vehicle occupied by two friends on West 19th Street in Ashtabula, Ohio. As Butcher approached the West Avenue intersection, Butcher pulled alongside a pickup truck owned and operated by Deamon's daughter, Stephanie Traz ("Traz") and occupied by Deamons. Butcher's vehicle was in the right-hand turning lane on the passenger's side of Traz' pickup. Both vehicles were stopped at a red light. What happened next is disputed.
 {¶ 8} According to Deamons, Butcher leaned out of his window and began swearing at her and demanding to know her address and phone number. Deamons then testified that Butcher said that the charges were still pending against him and that she had better drop them "or else." When the light changed, Traz turned onto Lake Avenue. Deamons testified that she saw Butcher turn his vehicle around on West Avenue and begin to follow them. Deamons became scared and so Traz began to drive toward the police station. Deamons testified that as they drew near the station, Butcher disappeared. Traz corroborated Deamon's testimony that Butcher was yelling at her mother and asking where she lived and that Butcher followed them until they had almost reached the police station.
 {¶ 9} According to Butcher, while he was stopped at the light, he rolled down his window and asked Deamons politely if they could get together to talk about his security deposit. According to Butcher, Deamons' response was to flip him off and roll up her window. Butcher testified that when the light changed, he turned onto West Avenue and noticed that the car began overheating. Butcher testified that he turned the car around in Smith Park and then drove to a friend's apartment. At no time, Butcher testified, did he drive on Lake Avenue. Butcher's version of events was corroborated by the testimony of both of his friends who were in the car with him.
 {¶ 10} Butcher assigns the following assignments of error for review:
 {¶ 11} "[1.] The evidence produced at trial was insufficient to convict appellant of intimidation.
 {¶ 12} "[2.] Defendant-appellant was denied the effective assistance of counsel as guaranteed by the Six and Fourteenth Amendments to the U.S. Constitution and Article I, Section X of the Ohio Constitution.
 {¶ 13} "[3.] The appellant has been deprived of his liberty without due process of law for not receiving the minimum prison sentence in conformance with Ohio's sentencing statute."
 {¶ 14} Despite the wording of the first assignment of error, Butcher argues that his conviction was against the manifest weight of the evidence. In order to convict Butcher for intimidation of a witness, the state was required to prove that Butcher "knowingly and by force * * * attempt[ed] to influence, intimidate, or hinder the victim of a crime * * * or witness involved in a criminal action or proceeding in the discharge of the duties of the * * * witness." R.C. 2921.04(B).
 {¶ 15} When a court reviews a verdict to determine whether it is against the manifest weight of the evidence, it "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 16} In contrast to considering whether a conviction was against the manifest weight of the evidence, "[w]hether the evidence is legally sufficient to sustain a verdict is a question of law." Thompkins, supra, at 386. "[S]ufficiency is a test of adequacy" of the evidence, focusing on the qualitative character of the evidence rather than its persuasiveness. Id.
 {¶ 17} Butcher argues that the state's evidence regarding the supposed intimidation on July 8, 2001, is inconsistent and unconvincing. According to Butcher, the testimony of Deamons and Traz established that Butcher was yelling at Deamons about money and that he then followed her down the street. Butcher claims that his own testimony, corroborated by two witnesses in the car with him, establishes that his attempt to speak with Deamons was cordial and that it was Deamons who responded by flipping him off. Moreover, Butcher notes that the fact that the car he was operating had over-heated is inconsistent with his alleged "hot pursuit" of Deamons and Traz. According to Butcher, because the evidence fails to establish that any mention was made of Deamons' being a witness or dropping the charges against Butcher, it was impossible to conclude, as did the jury, that the events of July 8 amounted to intimidation.
 {¶ 18} Butcher fails to credit the testimony of Deamons that Butcher told her that she had better drop the charges against him "or else." When asked what she understood this to mean, Deamons responded: "That he'd already told me I was going to disappear or he said that I was going to disappear. I took it that he was going to try to do whatever he could to keep me from going to court. It scared me." Deamons is referring to other incidents that she testified to where Butcher had threatened that she would be sorry if she did not drop the charges or that the witnesses in his case would disappear. Deamons understood Butcher's words "or else" in the context of the other incidents. The jury had heard the testimony of these other incidents and was entitled to make the same inference as Deamons in interpreting Butcher's words. This testimony is sufficient to support a charge of intimidation. State v. Johnson, 8th Dist. No. 80436, 2002-Ohio-7057, at ¶¶ 99-101 (statement that "if I go to jail, this time I'm going to get you and your kids" sufficient to support conviction for intimidation).
 {¶ 19} Despite Butcher's argument to the contrary, Deamons' testimony that Butcher told her to drop the charges "or else" is credible evidence that Butcher attempted to intimidate Deamons. It does not matter whether Traz or the other witnesses corroborated this part of Deamons' testimony. "Weight is not a question of mathematics, but depends on itseffect in inducing belief." Thompkins, supra, at 387 (citation omitted) (emphasis sic). In this case, the jury choose to credit Deamons' testimony over that of the other witnesses. Unless Deamons' testimony was completely lacking in credibility, which it was not, this court will not disturb the jury's verdict. State v. Bates (Mar. 30, 2001), 11th Dist. No. 99-P-0100, 2001 Ohio App. LEXIS 1561, at *26 (credibility of the witness is the critical issue for the jury to decide and will not be reversed unless the testimony is completely lacking in credibility). Butcher's first assignment of error is overruled.
 {¶ 20} In his second assignment of error, Butcher argues that he received ineffective assistance of counsel by his trial counsel's failure to conduct discovery and request a bill of particulars.
 {¶ 21} The Ohio Supreme Court has adopted a two-part test to determine whether an attorney's performance has fallen below the constitutional standard for effective assistance. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard or reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389,2000-Ohio-448, citing Strickland v. Washington (1984), 466 U.S. 668,687-688. As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 22} The failure to prove any one prong of this two-part test makes it unnecessary for a court to consider the other prong. Madrigal, supra, at 389, citing Strickland, supra, at 697. In the present case, we find that regardless of whether counsel's failure to seek discovery or request a bill of particulars fell below an objective standard of reasonableness, this failure did not prejudice Butcher.
 {¶ 23} Butcher argues that since his conviction was based on a series of incidents leading up to the events of July 8, 2001, for which he was indicted, the lack of discovery and bill of particulars prevented him from preparing an adequate defense. The indictment only described the events of July 8, 2001, and gave Butcher no indication of the other circumstances that the prosecution would use to prove that the events of July 8, 2001, constituted intimidation. As examples of discoverable material, Butcher cites the prosecution's use of the letter he wrote to Deamons and Deamons' testimony of prior confrontations between Butcher and Deamons, her boyfriend and her son.
 {¶ 24} Butcher's argument is belied by the fact that Butcher's defense at trial was adequately prepared. There is no indication in the record that testimony regarding the other incidents involving Butcher and Deamons either surprised defense counsel or required defense counsel to alter his trial strategy. Butcher produced two witnesses to contest Deamons' account of the events of July 8, 2001. Butcher acknowledged sending Deamons the letter of June 22, 2001, and receiving her response of June 23, 2001, in which Deamons accuses Butcher of attempting to intimidate her son. In regards to the confrontation of May 11, 2001, between Butcher, Deamons, and her boyfriend, Butcher produced his mother as a witness who disputed Deamons' testimony. Clearly defense counsel must have anticipated that the prosecution would raise the May 11, 2001, confrontation since defense counsel had prepared rebuttal testimony.
 {¶ 25} Butcher's conviction in this matter essentially rested on whose version of events the jury believed. Butcher has failed to demonstrate how discovery and a bill of particulars would have affected how the jury weighed the credibility of the witnesses. In the absence of such a demonstration, we cannot say with a reasonable probability that, but for the trial counsel's failure to seek discovery and a bill of particulars, the result of the trial would have been different. Butcher's second assignment of error is overruled.
 {¶ 26} In Butcher's third assignment of error, Butcher argues that the trial court erred by not imposing the minimum sentence upon Butcher in accordance to Ohio's sentencing laws. The minimum sentence for intimidation of a witness, a third-degree felony, is one year. R.C.2929.14(A)(3). The trial court sentenced Butcher to two years incarceration. Butcher maintains that he was entitled to the minimum sentence for a third-degree felony because he had not served any prior prison time and because there was no actual violence in the commission of the offense.
 {¶ 27} In order for a trial court to impose anything longer than the shortest authorized prison term on an offender who has not previously served a prison term, the court must find on the record that the shortest authorized prison term would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender. R.C. 2929.14(B). "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." State v. Edmonson,86 Ohio St.3d 324, 1999-Ohio-110, at syllabus (emphasis sic). Rather, "the trial court merely has to state, somewhere on the record, that one or both of the findings set forth in R.C. 2929.14(B) justify a longer sentence than the minimum." State v. Bell, 11th Dist. No. 2001-A-0032,2002-Ohio-2948, at ¶ 8. A reviewing court will not disturb an offender's sentence unless it finds, by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law. Id. at ¶ 7.
 {¶ 28} Here the trial court stated that "community controls would denigrate the seriousness of what took place here, and, in fact, I feel that a prison sentence is warranted in this case." We hold that this record demonstrates that the trial court made the necessary findings required by R.C. 2929.14(B) to justify imposing a longer sentence than the minimum authorized sentence. Although the trial court stated that community control sanctions would denigrate the seriousness of Butcher's conduct rather than that the shortest prison term would demean the seriousness of Butcher's conduct, the deviation from the statutory language does not invalidate the court's finding. It has been often stated that "a sentencing court is not required to use the exact language of the statute, as long as it is clear from the record that the court made the required findings." State v. Miah, 8th Dist. No. 80792,2002-Ohio-3800, at ¶ 16 (citations omitted). In this case, the trial court clearly found that imposing the minimum sentence would not do justice to the seriousness of Butcher's conduct.
 {¶ 29} Under the recent decision of the Ohio Supreme Court inState v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, when a trial court imposes a sentence beyond the statutory minimum sentence on an offender who has not served prior prison time, the "trial court is required to make its statutorily sanctioned findings at the sentencing hearing." Id. at paragraph two of the syllabus. We have considered the trial court's sentencing of Butcher in light of the Comer decision and find that it complies therewith. The findings made by the trial court necessary to impose the two-year sentence on Butcher are set forth in the transcript of Butcher's sentencing hearing.
 {¶ 30} Therefore, the record clearly and convincingly supports Butcher's sentence and that sentence is not otherwise contrary to law. We overrule Butcher's third assignment of error.
 {¶ 31} The judgment of the Ashtabula Court of Common Pleas is affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., and WILLIAM M. O'NEILL, J., concur.